J-S03001-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: F.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.M. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 961 WDA 2020 |

Appeal from the Order Entered August 17, 2020
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-0000021-2020

BEFORE:   DUBOW, J., MURRAY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY DUBOW, J.:                              **FILED: MARCH 12, 2021**

E.M. ("Mother") appeals from the August 17, 2020 Order[1] of the Court of Common Pleas of Allegheny County Orphans' Court, which involuntarily terminated her parental rights with respect to her son, F.M. ("Child").  Because the record supports the findings and conclusions of the orphans' court, we affirm the Order.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

We glean the following factual and procedural history from the orphans' court's Opinion, which is supported by the certified record.  In July 2018, Child was born to Mother and F.G.H. ("Father").  The hospital staff immediately

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The orphans' court dated the Order August 6, 2020, but docketed the Order on August 17, 2020.

diagnosed Child with fetal alcohol syndrome ("FAS") and gastroesophageal reflux disease ("GERD") and placed Child in the neo-natal intensive care unit ("NICU") due to his medical issues. Two days later, the hospital alerted Children, Youth, and Families ("CYF") that Mother was unable to stay awake and alert while holding and visiting Child in the NICU. Mother informed CYF that she drank alcohol during her pregnancy and that she was currently engaged in a dual diagnosis program at UPMC Western Psychiatric Hospital ("WPIC"). Mother agreed to submit to a drug and alcohol evaluation through "POWER," which yielded the recommendation of an intensive outpatient treatment program. Mother refused to follow the POWER recommendation. Accordingly, CYF obtained an Emergency Custody Authorization ("ECA") prior to Child's discharge from the hospital and placed Child in a foster home.

On September 9, 2018, the court adjudicated Child dependent. The orphans' court issued an Order with objectives that required Mother to (1) participate in coached parenting; (2) visit Child six times per week; (3) continue to comply with all necessary treatment pursuant to her dual diagnosis program; (4) submit to random drug and alcohol screens; and (5) secure housing.

On February 5, 2020, CYF filed a Petition for Involuntarily Termination of Parental Rights ("TPR Petition") seeking to terminate Mother's parental rights to Child. The orphans' court conducted a hearing on the TPR Petition

on August 6, 2020; Mother failed to appear.[2, 3]  CYF presented the testimony of Taylor Wentzel, a visit coach for Project STAR; Krista Boyer, a caseworker for CYF; and Tess Maloney, senior case manager for placement services at Auberle.  Each testified that Mother continued to drink alcohol and failed to comply with mental health and alcohol treatment programs as recommended.  CYF also submitted four evaluations performed by Eric Bernstein, Psy.D., a court-appointed licensed psychologist, into evidence without objection.

On August 17, 2020, the orphans' court entered an Order involuntarily terminating Mother's parental rights to Child pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8) and (b).[4]  Thereafter, Mother filed a timely Notice of Appeal and Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

**ISSUES ON APPEAL**

Mother now raises the following issues for our review:

1. Did the [orphans'] court abuse its discretion and/or err as a matter of law in granting the petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), (5), and (8)?

_____

[2] The Hon. David L. Spurgeon presided over each dependency hearing and the parental rights termination hearing.

[3] At the time of the hearing, Child was twenty-five months old and represented by a single GAL/Counsel. **See In re T.S.**, 648 Pa. 236, 192 A.3d 1080 (Pa. 2018) (allowing child's counsel to serve as guardian *ad litem* and legal counsel where the child is too young to express preferences).

[4] The orphans' court also terminated the parental rights of Father.  Father is not a party in this appeal.

- 3 -

2. Did the [orphans'] court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of the child pursuant to 23 Pa.C.S. § 2511(b)?

Mother's Brief at 6-7.

**LEGAL ANALYSIS**

In reviewing cases in which the orphans' court involuntarily terminated parental rights, appellate courts must accept the findings of fact and credibility determinations of the orphans' court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). If the record supports the factual findings, appellate courts then determine if the orphans' court made an error of law or abused its discretion. *Id.* Where the competent record evidence supports the court's findings, we must affirm the orphans' court decree even though the record could support an opposite result. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

"The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73–74 (Pa. Super. 2004) (citations omitted). Appellate courts defer to the orphans' court that often has "first-hand observations of the parties spanning multiple hearings." *In re T.S.M.*, *supra* at 267 (citations and quotation marks omitted). Importantly, "[t]he court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of

- 4 -

progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time . . . in which to **complete** the process of either reunification or adoption for a child who has been placed in foster care." *In re Adoption of R.J.S.,* 901 A.2d 502, 513 (Pa. Super. 2006) (emphasis in original; citations omitted).

In addressing petitions to terminate parental rights involuntarily, the Adoption Act requires the court to conduct a bifurcated analysis. *See* 23 Pa.C.S. § 2511(a) and (b). The court first focuses on the conduct of the parent, and if the party seeking termination presents clear and convincing evidence that the parent's conduct meets one of the grounds for termination set forth in Section 2511(a), then the court will analyze whether termination of parental rights will meet the needs and welfare of the child, *i.e.*, the best interests of the child, as provided in Section 2511(b). The courts must examine the existence of the child's bond with the parent, if any, and the potential effect on the child of severing such bond. *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). A parent's basic constitutional right to the custody and rearing of his child is converted upon the failure to fulfill his parental duties to provide proper parenting and fulfillment of the child's potential in a permanent, healthy, safe environment. *In re B.N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

While the orphans' court here found that CYS met its burden of proof under 23 Pa.C.S. § 2511(a)(2), (5), (8) and (b), we need only agree with its

decision as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm the termination of parental rights. ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

**Termination Pursuant to Section 2511(a)(2)**

We first conclude that the court properly exercised its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2). Section 2511(a)(2) provides for termination of parental rights where the petitioner demonstrates by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S. § 2511(a)(2); ***In re Adoption of S.P.***, 47 A.3d 817, 827 (Pa. 2012) (citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. ***In re A.L.D.***, 797 A.2d 326, 337 (Pa. Super. 2002). This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. ***Id.*** At a termination hearing, the orphans' court may properly reject as untimely or disingenuous a parent's vow to follow through

on necessary services when the parent failed to co-operate with the agency or take advantage of available services during dependency proceedings. ***Id.*** at 340.

Here, Mother argues that CYF failed to present clear and convincing evidence that she demonstrated a continued incapacity or refusal to perform parental duties pursuant to Section 2511(a)(2). Mother's Brief at 19. Mother avers that she engaged in dual diagnosis treatment and the trial court abused its discretion when it relied on layperson testimony to conclude that she continued to abuse alcohol and appeared at visits intoxicated. ***Id***. at 14. Mother further contends that because the provider cancelled visits when they suspected that Mother was intoxicated, there was no evidence to demonstrate whether Mother's alleged alcohol consumption rendered her incapable of parenting Child. ***Id***. at 20.

In its Opinion, the orphans' court concluded that, due primarily to Mother's excessive alcohol use, Child lacked essential parental care for twenty-four months at the time of the termination hearing. Orphans' Court Opinion, filed 10/26/20, at 5-6. The orphans' court found that Mother's excessive alcohol use was the primary condition that led to Child's removal from Mother, and further concluded that Mother is unwilling or unable to make the necessary progress to remedy this problem and care for Child. ***Id.*** The trial court opined, "Mother's continued course of conduct using alcohol interfered with her concept of reality and her ability to parent." ***Id***. at 8.

To support its conclusions, the orphans' court made findings that Mother was non-compliant with the ongoing recommendation to engage in a higher level of alcohol treatment, specifically to attend intensive outpatient treatment on a daily basis. *Id.* at 6-7. The court found that Mother failed to attend all requested alcohol screens and routinely tested positive when she did appear. *Id*. at 8. Also, the court made findings that Mother failed to believe that Child had FAS, failed to consent to necessary medical treatments for Child, and failed to obtain appropriate housing despite referrals from CYS. *Id*. at 8, 10.

While Mother participated in visitation with Child and coached parenting, her alcohol abuse overshadowed her progress. The orphans' court credited Ms. Maloney's testimony that "Mother exhibited a two year cyclical pattern of visitation that vacillated[] between periods of consistency and appearing for visits under the influence and would miss the next few scheduled visits." *Id.* at 9. The trial court found that Mother arrived at supervised visitation at least ten times under the influence of alcohol, brought alcohol to visitation two times, exhibited unruly and erratic behavior that necessitated police intervention at visitation on two occasions, and appeared to be intoxicated when she attended Child's medical appointment on March 2, 2020. *Id*.

Mother participated in court-ordered coached parenting, however, the trial court found that Mother met her objective with "mixed results." *Id.* at 10. The court found Ms. Wentzel's testimony to be credible that Mother's parenting was appropriate when she was sober; however, on two occasions

Mother attended the coached visitation sessions under the influence of alcohol, which necessitated their cancellation due to Mother's inappropriate and hostile behavior. *Id.*

Having reviewed the record, we conclude that it supports the findings of the orphans' court that, due to her excessive alcohol consumption, Mother has not provided Child with the essential parental care, control, and subsistence necessary for Child's mental and physical well-being, and that Mother is unable or unwilling to remedy the causes of her parental incapacity any time in the near future. Thus, Mother is not entitled to relief.

**Termination Pursuant to Section 2511(b)**

We also conclude that, pursuant to Section 2511(b), the court properly determined that termination of Mother's parental rights would be in the best interests of Child. With respect to Section 2511(b), we consider whether termination of parental rights will best serve Child's developmental, physical, and emotional needs and welfare. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *Id.*

It is sufficient for the orphans' court to rely on the opinions of social workers and caseworkers when evaluating the impact that termination of parental rights will have on a child. *Id.* The trial court may consider intangibles, such as the love, comfort, security, and stability the child might

- 9 -

have with the foster parent. *See In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011). Ultimately, the concern is the needs and welfare of a child. *In re Z.P.*, *supra* at 1121.

In the present case, Mother merely avers that the orphans' court erred when it determined that CYF met its burden under Section 2511(b) because preserving Mother and Child's relationship "adds value to [Child's] life." Mother's Brief at 25.

The orphans' court concluded that CYF met its burden of proof pursuant to Section 2511(b), and credited the report of Dr. Bernstein who concluded that Mother and Child have a familiar and established relationship, but that Child "enjoys a stronger bond with his foster mother, who consistently assumes responsibility for his daily needs." Orphans' Ct. Op, at 12. The orphans' court also credited Dr. Bernstein's explanation that Mother does not appreciate Child's special needs:

> Mother does not seem to fully embrace the understanding of the relationship between her decision to imbibe alcohol during pregnancy and her son's deficits. He receives occupational therapy and needs assistance with chewing. Consistent with the diagnoses of FAS, he may have long-term learning needs and/or challenges as well. Mother minimizes others' concerns about his health as excessive and unnecessary. How she will in turn provide for her son as he ages and develops, and his needs increase is uncertain especially if she does not view him as having serious limitations.

Orphans' Ct. Op. at 14, citing CYF Exhibit 4.4- Bernstein Report- 2/4/20. Conversely, Dr. Bernstein concluded that foster mother presented as a "responsible and stable pre-adoptive placement/caregiver for the child." *Id.*

at 15, citing CYF Exhibit 4.3- Bernstein Report- 10/15/19. The orphans' court found Ms. Boyer's testimony to be credible that there was a visible bond between Child and foster mother, terminating Mother's parental rights would not cause irreparable harm to Child, and termination of parental rights meets Child's needs and welfare. *Id.* Accordingly, the orphans' court concluded that severing Child's bond with Mother would not cause Child "extreme emotional consequences" and that terminating Mother's parental rights would be in Child's best interest. *Id*. at 16-17.

Our review of the record supports the orphans' court's findings. We do not discern an error of law or abuse of discretion with respect to the court's conclusion. Thus, we affirm the court's determination that the involuntary termination of Mother's parental rights is in the best interests of Child.

Order affirmed.

Judge Murray joins the memorandum.

Judge Strassburger did not participate.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/12/2021

- 11 -